Ghoti Estates, Inc. *v.* Freda's Capri Restaurant, Inc.

fendants' negligence rather than from a cause for which the defendants were not responsible. In our opinion it is a matter of conjecture and surmise whether the slipping of the ladder was due to the slipping of the slates or to the force exerted by the plaintiff in attempting to get upon it, causing it to swing to the right together with the two slates. *Walker* v. *Benz Kid Co.* 279 Mass. 533. *Gallo* v. *Leahy,* 297 Mass. 265. *Mucha* v. *Northeastern Crushed Stone Co. Inc.* 307 Mass. 592. *Williams* v. *United Men's Shop, Inc.* 317 Mass. 319.

The exceptions to the exclusion of evidence of certain witnesses, much of which was in most instances substantially introduced in evidence during the examination of these witnesses, require no further discussion. Even if it all had been admitted the result would be the same.

*Exceptions overruled.*

---

GHOTI ESTATES, INC. *vs.* FREDA'S CAPRI RESTAURANT, INC.

Suffolk.    November 4, 1953. — December 13, 1954.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Landlord and Tenant,* Termination of lease, Insolvency of lessee, Eviction, Waiver, Tenancy at sufferance, Security for rent, Loss of rent. *Insolvency. Bankruptcy,* "Arrangement." *Waiver. Election.*

The filing in the United States District Court by a lessee of a petition for an arrangement with unsecured creditors under c. 11 of the bankruptcy act, in which it was recited that the lessee was "unable to pay his debts" and that the lease was "rejected" as an executory contract, followed by the appointment of a receiver and the confirmation of the arrangement by the referee in bankruptcy, constituted, without more, a breach of the lease and terminated it where it provided that if a receiver of the lessee's property should be appointed the lessor lawfully might enter the premises and terminate the lease and that "for the more effectual securing to the lessor of the rent" "the filing of any petition in . . . insolvency" by the lessee should be deemed to

constitute a breach of the lease "and thereupon, ipso facto and without entry," the lease should terminate. [25]

An eviction by the owner of premises of a former lessee in occupation thereof after termination of the lease was not established, although the owner gave no notice to vacate before commencing an action of summary process against the occupant, since, if the occupant was a tenant at sufferance, he was not entitled to notice, and if he was a tenant at will he waived notice by agreeing to entry of "judgment for the plaintiff for possession" in such action. [25–26]

A lessee who continued in possession of the leased premises for a certain period after termination of the lease without any agreement with the owner of the premises as to holding as a tenant at will was a tenant at sufferance and was liable to the owner for use and occupation and for water used during that period. [26]

An owner of premises holding a sum deposited by a lessee thereof as security for the lessee's performance of the lease was entitled, after termination of the lease through a breach by the lessee, to recover in an action against him for use and occupation and for water furnished during a period when he was in possession of the premises as a tenant at sufferance and, under provisions of the lease that the lessee should "indemnify" the lessor "against all loss of rent" during the remainder of the term or, at the lessor's election, pay him upon such termination "as damages" "the balance of the rent due for the remainder of the term less the fair rental value of the demised premises for" the remainder of the term, was also entitled to elect to seek such indemnity against loss of rent at the end of the term and to retain the deposit as security for its payment. [28–30]

CONTRACT. Writ in the Municipal Court of the City of Boston dated November 3, 1952.

Upon removal to the Superior Court, the action was tried before *Beaudreau*, J.

*Meyer H. Goldman*, (*John Bernstein & M. James Zelman* with him,) for the defendant.

*Stuart Macmillan*, (*Samuel F. Clapp* with him,) for the plaintiff.

COUNIHAN, J. This is an action of contract whereby the plaintiff, hereinafter called Ghoti, seeks to recover from the defendant, hereinafter called Freda, for use and occupation of premises 130–132 Boylston Street and 1 and 2 Boylston Place, Boston, for a period from September 12, 1952, to November 3, 1952, and for water used on said premises during part of that time. Freda's answer was a general denial, payment, eviction, and surrender by Freda and ac-

ceptance by Ghoti of possession of the premises occupied by Freda under a written lease, the material parts of which are hereinafter set forth. By way of further answer Freda set up matters contained in a declaration in set-off.

By the declaration in set-off Freda sought to recover the sum of $10,000 under a "Security Agreement" which is hereinafter set forth. This claim was based upon a wrongful termination of the lease, eviction, and Ghoti's acceptance of Freda's surrender of possession under said lease.

Ghoti in answer to the declaration in set-off set up a general denial, and further alleged that Freda filed a petition for an arrangement under c. 11 of the bankruptcy act (parts of this petition will be hereinafter referred to) in which petition Freda rejected the lease as an executory contract. Ghoti further alleged that the filing of this petition and the confirmation of it by the referee in bankruptcy constituted a breach of the lease, so that thereafter Freda became and continued to be a tenant at sufferance. It further alleged that no accounting under the "Security Agreement" was due until after December 31, 1961, the date of the termination of the lease, when all damages including loss of rent provided for in the lease could for the first time be fully and accurately determined.

The original action with the declaration in set-off was tried before a judge and jury. At the close of the evidence upon motions filed by the parties[1] the judge directed a verdict for Ghoti for the full amount claimed by it in its declaration and directed a verdict for Ghoti on Freda's declaration in set-off. He denied the motion of Freda for a directed verdict on its declaration in set-off. The judge took no action upon a request for ruling filed by Freda.[2]

---

[1] "Now comes the plaintiff and moves upon the pleadings, opening and upon all the evidence that a verdict be ordered in its favor."

"Now comes the plaintiff (the defendant in set-off) and moves upon the pleadings, opening and upon all the evidence that a verdict be ordered in its favor on the defendant's declaration in set-off."

"Now comes Freda's Capri Restaurant, Inc. and moves that this court direct a verdict in its favor on its declaration in set-off."

[2] "As a matter of law, the Freda's Capri Restaurant, Inc. is entitled to recover the $10,000 security deposit under its declaration in set-off."

The action comes here upon Freda's exceptions to the action of the judge upon the motions and to the denial of Freda's request for a ruling. Freda also claimed exceptions to the action of the judge on evidential matters.

Certain material facts appear to be established from exhibits which are before us. One exhibit was a lease by one Goggin to Freda dated November 15, 1951, for a term of ten years beginning January 1, 1952.[1]

Accompanying the lease and attached to it was a "Security Agreement" executed by Goggin and Freda whereby

---

[1] Relevant parts of this lease are as follows:

"Yielding and paying as rent therefor the sum of Thirteen Thousand Dollars, ($13,000.00) yearly for the first five years of said term and the sum of Fourteen Thousand Dollars ($14,000.00) yearly for the second five years of said term, payable by equal monthly installments . . . .

"I. The Lessee covenants and agrees with the Lessor that, during this Lease and for such further time as the Lessee shall hold the demised premises or any part thereof, the Lessee (a) will pay unto the Lessor the said rent at the times and in the manner aforesaid; and (b) will pay when due all charges for the use of water, steam, and other services rendered to the demised premises . . . .

"VIII. Provided also, and this Lease is upon the condition, that if the Lessee shall neglect or fail to perform or observe any of the Lessee's covenants contained herein or agreement relating to the demised premises . . . or if a petition in bankruptcy is filed by the Lessee, or if any assignment shall be made of the Lessee's property for the benefit of creditors, or if a *receiver* . . . or other similar officer shall be appointed to take charge of all or any part of the Lessee's property by a court of competent jurisdiction, then, and in any of the said cases . . . the Lessor lawfully may, at any time thereafter, and without demand or notice, enter into and upon the demised premises or any part thereof in the name of the whole, and repossess the same as of the Lessor's former estate and expel the Lessee . . . without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant, and upon entry as aforesaid this Lease shall determine; and the Lessee covenants that in case of such termination . . . the Lessee will indemnify the Lessor against all loss of rent which the Lessor may incur by reason of such termination during the residue of said term; or at the election of the Lessor, the Lessee will upon such termination pay to the Lessor as damages such a sum as at the time of such termination represents the balance of the rent due for the remainder of the term less the fair rental value of the demised premises for the balance of said term.

"IX. *And for the more effectual securing to the Lessor of the rent and other payments herein provided,* it is agreed as a further condition of this lease that the filing of any petition in bankruptcy or *insolvency* by the Lessee shall be deemed to constitute a breach of this lease, and thereupon, ipso facto and without entry of [or?] other action by the Lessors, this Lease shall become and be terminated and notwithstanding any other provisions of this Lease the Lessor shall forthwith upon such termination be *entitled* to recover of the Lessee damages for such breach in an amount equal to the amount of rent reserved in this lease for the residue of the term hereof, less the fair rental value of the leased premises for the residue of said term . . ." (emphasis supplied).

Freda deposited with Goggin the sum of $10,000 for the faithful performance of the lease.[1]

It was not disputed that Ghoti acquired the reversionary interest in the premises, together with an assignment of the lease, on June 6, 1952, and that at the same time the sum of $10,000 was paid over to Ghoti by Goggin by way of an adjustment on the purchase price of the premises.

A copy of the original petition for an arrangement by Freda dated June 9, 1952, filed in the United States District Court for the District of Massachusetts in proceedings under c. 11 of the bankruptcy act was in evidence. It appears from this petition that Freda alleged that it "is

---

[1] "SECURITY AGREEMENT

Boston, Massachusetts
November 15, 1951

"The Lessor hereby acknowledges receipt from the Lessee of the sum of Ten Thousand Dollars ($10,000) paid by the Lessee to the Lessor as a further consideration for the Lessor entering into the Lease dated November 15, 1951, between Daniel J. Goggin, Lessor, and Freda's Capri Restaurant, Inc., Lessee, for the restaurant premises at 130–132 Boylston Street and 1 and 2 Boylston Place, Boston, Massachusetts.

"It is hereby agreed that the said Ten Thousand Dollars ($10,000) is to be held by the Lessor as security for the full, faithful and punctual performance by the Lessee of the Lessee's terms, covenants and conditions contained in said Lease for the full term of said Lease.

"The Lessor hereby agrees that if on March 1, 1961, the Lessee is a tenant in possession of the leased premises and has to that date fully, faithfully and punctually performed all of the Lessee's terms, covenants and conditions contained in said Lease and has to that date paid all rental and other charges provided for in said Lease and has otherwise discharged all of the Lessee's obligations under said Lease, then in that event and not otherwise, the said Ten Thousand Dollars ($10,000) shall be applied towards the payment of the balance of the rent due under said Lease.

"However, the application of said security deposit to the payment of the rent due for the balance of the term of the Lease, shall in no way excuse the Lessee from continuing to fully, faithfully, and punctually perform all of the Lessee's terms, covenants and conditions contained in said Lease.

"If, at any time, the Lessee fails to fully, faithfully and punctually perform any of the Lessee's terms, covenants and conditions contained in said Lease, then, the Lessor may apply any part or the whole of said security deposit to indemnify the Lessor for any damage the Lessor may have suffered or will suffer because of such failure to perform by the Lessee; and the Lessor shall in no way be precluded from recovering in addition to the said security deposit, any other damages or expenses that the Lessor may suffer by reason of any violation by the Lessee of the Lessee's terms, covenants and conditions contained in said Lease.

"If said Lease is terminated prior to the expiration of the term thereof by the agreement of the parties, or in accordance with the terms contained in said Lease, and the Lessee has fully, faithfully and punctually performed all of the Lessee's terms, covenants and conditions contained in said Lease up to the date of said termination thereof, then the said deposit of Ten Thousand Dollars ($10,000) is to be returned by the Lessor to the Lessee."

unable to pay . . . [its] debts as they mature, and proposes the following arrangement with . . . [its] *unsecured creditors*" (emphasis supplied). It recited an executory contract for said premises made on November 15, 1951, between Goggin as lessor and Freda as lessee which "is hereby rejected." The petition was subsequently amended in a manner not here material. On September 11, 1952, the referee in bankruptcy entered an order that "said arrangement be, and it hereby is, confirmed."

It appears that Ghoti on June 30, 1952, filed in the bankruptcy court in the arrangement proceedings a petition for payment of what was due for use and occupation in which it was recited that Irving Widett was appointed receiver for the debtor on June 11, 1952. On this petition the referee found that the "fair rental value of the premises designated in said petition, and occupied by the debtor, as debtor in possession, is the rent reserved under the lease referred to in said petition, namely $1,083.33 per month," and he ordered that the receiver, Irving Widett, pay to Ghoti out of nonbankruptcy funds in his possession the sum of $794.42, said sum representing the fair rental value of the premises from June 9, 1952, to June 30, 1952, inclusive. The receiver paid Ghoti the fair rental value of the premises at this rate up to and including September 11, 1952, when the petition for an arrangement was confirmed.

It is clear that Freda paid nothing for use and occupation of the premises from September 12, 1952, to November 3, 1952, and nothing for use of water during part of that period. It is both of these claims on which Ghoti seeks to recover in this action which was begun in the Municipal Court of the City of Boston by writ dated November 3, 1952, and later removed to the Superior Court by Freda.

On November 3, 1952, Ghoti also instituted an action of summary process in the Municipal Court of the City of Boston against Freda to recover possession of the premises. No notice to vacate the premises was given to Freda by Ghoti as required by G. L. (Ter. Ed.) c. 186, § 11, or § 12 as amended. There was likewise no evidence of an entry

by Ghoti for breach of the conditions of the lease. In this action of summary process an agreement was entered into between the parties, dated November 21, 1952, and filed in court.[1]

Freda continued to occupy the premises until January 21, 1953, when it vacated them and turned the keys over to an attorney for Ghoti. It was undisputed that nothing was due from Freda for the period from November 4, 1952, to January 21, 1953.

It is apparent from certain letters which were in evidence that Freda was to pay the rent of the premises for June, 1952, to one Heller for whom Goggin was a straw, and that from July 1, 1952, it was to pay the rent to Ghoti. Heller, called as a witness by Ghoti, testified that he received no rent for June, 1952. In cross-examination, however, he testified that he received rent from June 9 to June 30 from the receiver but that he received no rent from June 1 to June 9.

There was evidence of many talks and some correspondence between representatives of Ghoti and representatives of Freda relative to a continuance of the tenancy of Freda as a tenant at will, but there was no evidence that any definite agreement in this respect was arrived at.

## GHOTI'S CASE.

The questions before us on Ghoti's declaration are: (1) Upon the pleadings and the evidence is Ghoti entitled to recover from Freda the sum of $1,877.77 for use and occupation of the premises hereinbefore described for the period from September 12, 1952, to November 3, 1952? (2) Is Ghoti entitled to recover from Freda the sum of $133

---

[1] "Now come the parties and agree that the following entry may be made: 'Judgment for the plaintiff for possession. Execution not to issue until January 5, 1953; provided, however, that use and occupation payments at two hundred sixty dollars ($260) per week be paid as follows: Payments for the three weeks ending November 24, 1952 to be paid at time of entry of judgment, and payment for each week thereafter on succeeding Mondays until the premises be vacated, and if said payments are not made as above, execution to issue immediately upon default in said payments upon affidavit by the plaintiff's attorney of such default filed with the Clerk of Court.'"

for use of water by Freda on said premises during part of
the same period?   We are of opinion that the answer to
these questions must be "Yes."

As we have already pointed out, Freda acquired posses-
sion of these premises on January 1, 1952, by virtue of a
written lease the material parts of which have been herein-
before recited.   Ghoti asserts that there was a breach of
this lease by reason of the filing in the bankruptcy court of
the petition for an arrangement hereinbefore described.

We emphasize those parts of the lease which appear to us
to be decisive.   Paragraph VIII provides, ". . . this Lease
is upon the condition, that . . . if a petition in bank-
ruptcy is filed by the Lessee . . . or if a *receiver* . . .
shall be appointed . . . by a court of competent jurisdic-
tion . . . the Lessor lawfully may . . . enter into and
upon the demised premises . . . and upon entry . . .
this Lease shall determine; and the Lessee covenants that
in case of such termination . . . the Lessee will indemnify
the Lessor against all loss of rent which the Lessor may
incur by reason of such termination during the residue of
said term" (emphasis supplied).   Paragraph IX reads in
part, "*And for the more effectual securing to the Lessor of the
rent* and other payments herein provided, it is agreed as a
further *condition* of this lease that the filing of any petition
in bankruptcy or *insolvency* by the Lessee shall be deemed
to constitute a breach of this lease, and thereupon, *ipso
facto and without entry* of [or?] other action by the Lessors,
this Lease shall become and be terminated and . . . the
Lessor shall forthwith upon such termination be *entitled* to
recover of the Lessee damages for such breach in an amount
equal to the amount of rent reserved in this lease for the
residue of the term hereof, less the fair rental value of the
leased premises for the residue of said term . . ." (em-
phasis supplied.)

It is plain from the language of paragraphs VIII and IX
of the lease that they must be read together and that
Ghoti was entitled to avail itself of the provisions of either
or both of these paragraphs.   The words in paragraph IX,

"And for the more effectual securing to the Lessor of the rent and other payments," significantly bear this out.

The filing of the petition for an arrangement was an act of insolvency in the equity or business sense for in it Freda alleged that it "is unable to pay . . . [its] debts as they mature, and proposes the following arrangement with . . . [its] unsecured creditors." *Finn* v. *Meighan*, 325 U. S. 300, 303. The petition likewise recited an executory contract by way of said lease which "is hereby rejected." Furthermore it appears that in these proceedings a receiver was appointed for Freda. It is manifest that these proceedings without more constituted a breach of the lease and terminated it.

Ghoti contends that thereafter Freda continued on as a tenant at sufferance and as such it was liable for use and occupation, G. L. (Ter. Ed.) c. 186, § 3, and that the provision of the lease regarding rent "may be used in evidence by either party to prove the amount of rent due from the defendant." G. L. (Ter. Ed.) c. 186, § 5.

Freda asserts that it was a tenant under the lease or a tenant at will during the period for which Ghoti claims rent for use and occupation. It contends that because there was no entry for breach of the lease nor a notice to vacate under G. L. (Ter. Ed.) c. 186, § 11, or § 12, as amended in a manner not here material, the conduct of Ghoti amounted to an eviction. It also asserted in its answer that there was a surrender of possession of the premises by Freda and acceptance of the same by Ghoti by mutual agreement.

It is patent from what we have said that Freda was not a tenant under the lease because of the breach of the lease which terminated it and that because of the provisions of paragraph IX of the lease no entry was necessary.

We are of opinion that on the question of eviction if Freda was a tenant at sufferance when the action of summary process was instituted no notice of any kind was required. *Benton* v. *Williams*, 202 Mass. 189, 192. If it was a tenant at will, as it asserts, the statutory notice was waived by the agreement between the parties for "Judgment for the plaintiff for possession" which was filed in

court in the action of summary process. *Williams* v. *Seder,* 306 Mass. 134, 136. See *Ansara* v. *Regan,* 276 Mass. 586, 589; *Macheras* v. *Syrmopoulos,* 319 Mass. 485, 486. There was therefore no eviction of Freda by Ghoti.

There was no evidence to support the contention of Freda that there was a surrender of possession of the premises by Freda and an acceptance by Ghoti. There was more or less loose talk between the parties about this but no definite agreement was ever entered into.

There is no merit in the plea of payment set up by Freda in its answer. It asserts that the money paid to Ghoti by the receiver for Freda for the period from June 9, 1952, to June 30, 1952, did not rightly belong to Ghoti because when Ghoti purchased the premises it was agreed that the rent for June, 1952, should be paid to one Heller for whom Goggin was acting as a straw. Freda contended therefore that this money received by Ghoti should have been applied by it in payment for the period for which Ghoti is now seeking to recover. Heller first testified that he, and not Ghoti, was entitled to the rent for June, 1952. He later testified, however, that he received the rent from June 9, 1952, to June 30, 1952, from the receiver. In any event it is clear that the rent for that period was paid so that no future claim could be made by either Ghoti or Heller for it.

We are of opinion that Freda continued in possession of the premises, after the termination of the lease, as a tenant at sufferance. *Benton* v. *Williams,* 202 Mass. 189, 192. As was true regarding the claim of a surrender of possession there was some talk and even some correspondence about permitting Freda to continue as a tenant at will but no definite agreement was ever entered into in this respect.

Freda as a tenant at sufferance was liable to pay for use and occupation for such time as it occupied the premises, G. L. (Ter. Ed.) c. 186, § 3, and the amount of rent reserved in the lease was properly used in evidence to prove the amount due. G. L. (Ter. Ed.) c. 186, § 5. It was also liable to pay for use of water.

There was no evidence to show that any amount for use

and occupation and for use of water other than that provided in the lease was claimed. The evidence shows that the amount of rent for use and occupation and for use of water for the period claimed by Ghoti was never paid by Freda. It follows that Ghoti on its declaration was entitled to recover the sum of $2,010.77.

## THE DECLARATION IN SET-OFF.

What we have already said in discussing Ghoti's case disposes of Freda's allegations in its declaration in set-off regarding eviction and surrender.

There remains to consider only its claim for the return of the $10,000 deposited under the "Security Agreement" because of the petition for an arrangement. Relevant Federal statutes are U. S. C. (1952 ed.) Title 11, §§ 706, 751, and 753. It was said in *Securities & Exchange Commission v. United States Realty & Improvement Co.* 310 U. S. 434, at page 446: "Chapter XI [of the bankruptcy act] provides a summary procedure by which a debtor may secure judicial confirmation of an 'arrangement' of his unsecured debts. . . . An arrangement is defined as 'any plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his unsecured debts upon any terms.' . . . The unsecured debtors may be treated generally or in classes." And at page 452, "Under Chapter XI only the rights of unsecured creditors of the debtor may be arranged and this without alteration of the status of any other classes of security holders or of subsidiaries."

A copy of the petition for an arrangement was in evidence. From this it appears that Freda alleged that "Your petitioner is unable to pay . . . [its] debts as they mature, and proposes the following arrangement with . . . [its] unsecured creditors," and further that "All secured creditors having valid security . . . shall be paid on such basis . . . as shall be agreeable to such respective secured creditors." Freda in its petition also rejected the lease. It further appears that in these proceedings a receiver was appointed for Freda by the bankruptcy court. There is

no doubt also that Freda was in default of the terms of the lease when this petition was filed because of its failure to pay rent for the month of June, 1952.

It is plain therefore that there was a breach of paragraph VIII of the lease by the nonpayment of rent, by the rejection of the lease in the petition for an arrangement, and by the appointment of a receiver. It is equally plain as we have already said that the filing of that petition constituted a petition in insolvency in the equity or business sense because Freda admitted its inability to pay its debts as they matured. *Finn* v. *Meighan*, 325 U. S. 300, 303. As we have already pointed out earlier, paragraphs VIII and IX may be read together so that Ghoti could take advantage of any of the provisions of either paragraph.

Upon the termination of the lease because of breaches of it and the rejection of it by Freda in the petition for an arrangement, Ghoti could then ipso facto recover rent for the remainder of the term less the fair rental value of the premises for the remainder of the term, or at its election could wait until the expiration of the term of the lease when for the first time loss of rent for the remainder of the term could be more accurately determined. The nearest approach to authority which we have been able to discover appears in *In re Luria*, 46 Fed. Sup. 305, 306, where it was said, "The facts show that the tenant, by failing to pay the monthly instalment of rent which became due and payable, was in default on February 1, 1942. Moreover, he filed a petition for an arrangement as a debtor under Chap. 11 of the Chandler Act, and subsequently consented to be adjudicated a bankrupt. By so doing he also committed a breach of the lease. In consequence the bankrupt cannot avail himself, nor can the trustee in his place, of that provision of the lease which sets forth: . . . 'If this lease shall terminate by any mandate of law or by agreement, or otherwise, prior to the expiration . . . of the term of the lease, then, and in that event, the security herein shall be returned to the tenant upon the date of such expiration, provided, however, the tenant has com-

plied with all the terms and conditions of this lease on his part.' Most obviously the tenant did not comply with the terms and conditions of the lease and is not, therefore, entitled to the return of the security under such authorities as *Burlingame* v. *Meyer*, 2 Cir., 45 F. 2d. 481. That case is decisive of the question herein involved and compels the conclusion that the landlord is entitled to be paid for the use and occupation of the premises, and is also justified in retaining the security until August 31, 1944 [the date of the termination of that lease], at which time it can be ascertained whether the landlord was damaged by the breach of the lease and to what extent." This case was cited with apparent approval in a footnote in *Oldden* v. *Tonto Realty Corp.* 143 Fed. (2d) 916, 921.

It is plain that here Ghoti made an election under paragraphs VIII and IX of the lease as it had a right to do and chose to recover in this action only rent unpaid and for use of water for part of the time Freda occupied as a tenant at sufferance and reserved its right to seek damages for other breaches of the lease until the end of the term of the lease. See *Gardiner* v. *Parsons*, 224 Mass. 347, 350–351; *Zevitas* v. *Adams*, 276 Mass. 307, 317.

Freda further contends that Ghoti waived its right to damages for future loss of rent by failing to file a claim in the proceedings for an arrangement. There is no merit to this contention. As we have already pointed out, a petition for an arrangement relates only to unsecured creditors. Ghoti was a secured creditor at least up to the amount of $10,000 by reason of the "Security Agreement." We assume without deciding that Ghoti might be barred from collecting more than three years' rent because of a limitation of recovery of not more than that amount of rent in arrangement proceedings. U. S. C. (1952 ed.) Title 11, § 753. It is easy, however, to conceive that Ghoti's loss would amount to at least $10,000 for the rent reserved in the lease for the first five years was $13,000 a year and for the second five years $14,000 a year.

We need not consider the three year limitation now even

if applicable. It is enough to say that that matter may be determined if and when any proceedings are had on the "Security Agreement."

It follows from what we have said that there was no error in the action of the judge in refusing to grant Freda's request for ruling or in directing a verdict for Ghoti on the declaration in set-off.

We have given due consideration to Freda's evidential exceptions and find them without merit.

*Exceptions overruled.*