**Martin A. DALE, Plaintiff, Appellant,**

v.

**H.B. SMITH COMPANY, INC.,
Defendant, Appellee.**

**Martin A. DALE, Plaintiff, Appellant,**

v.

**H.B. SMITH COMPANY, INC.,
Defendant, Appellee.**

Martin A. DALE, Plaintiff, Appellant,

v.

H.B. SMITH COMPANY, INC.,
Defendant, Appellee.

Nos. 96–2294, 96–2330 and 97–1208.

United States Court of Appeals,
First Circuit.

Heard Oct. 9, 1997.

Decided Feb. 17, 1998.

Rehearings Denied March 13
and April 29, 1998.

·Neva Kaufman Rohan, Springfield, MA, with whom Robinson, Donovan, Madden & Barry, P.C., was on brief, for appellant.

Peter J. Stasz, Westfield, MA, for appellee.

Before STAHL, Circuit Judge, CYR, Senior Circuit Judge, and LYNCH, Circuit Judge.

CYR, Senior Circuit Judge.

Plaintiff Martin A. Dale challenges various district court rulings relating to a parcel of commercial real estate located in Westfield, Massachusetts. Defendant H.B. Smith Co., Inc., a former occupant, cross-appeals. We affirm the district court judgment, in part, and vacate and remand in part.

## I

### BACKGROUND

Dale acquired title to the property in 1980, subject to a preexisting lease between his predecessor in title and International Harvestor Company ("International") and a preexisting sublease between International and PCP Realty Trust ("Realty Trust"). On December 31, 1983, International assigned its

leasehold interests in the property to Dale, including its rights as sublessor to Realty Trust. Realty Trust thereafter remitted $1,500 per month to Dale, representing the rent due International under its sublease. Several years later Realty Trust sublet the property to cross-appellant Smith at $9,433.67 per month.

On September 15, 1989, Dale initiated a successful state court action against Smith and Realty Trust to acquire summary possession of the property, claiming that Realty Trust had failed to renew the sublease with Dale (*qua* successor to International) in accordance with its terms. The state district court entered an order entitling Dale to recover possession based on its finding that the Realty Trust sublease had expired on May 31, 1989. Smith and Realty Trust appealed to the superior court before Dale could execute the district court judgment, which had been scheduled for August 1, 1990. Pursuant to the appeal bond, Smith was required to continue its regular monthly rent payments to Realty Trust. In turn, Realty Trust was to continue its rent payments to Dale and also escrow $7,933.67 monthly with the superior court, representing the difference between the $9,433.67 rental Realty Trust would receive directly from Smith and the $1,500 rental Realty Trust paid directly to Dale. Realty Trust and Smith ceased their payments as of January 1991.

On May 1, 1991, the superior court appeals filed by Smith and Realty Trust were dismissed for failure to comply with the appeal bond. Although Realty Trust subsequently appealed the dismissal order, its appeal was dismissed on November 4, 1991. In due course, the superior court released the escrowed monies to Dale. On February 14, 1992, Dale reentered the property pursuant to the state court judgment.

The present action was instituted by Dale in the United States District Court for the District of Massachusetts to recover damages from Smith for its use and occupancy of the property. Dale demanded damages equal to the rent prescribed in the Realty Trust–

Smith sublease for each month in which Smith held over as a tenant at sufferance, together with the property taxes assessed during the same period. Dale alleged that Smith became a tenant at sufferance on June 1, 1989—the day after the sublease between Dale and Realty Trust expired—and that Smith remained a tenant at sufferance until Dale recovered possession on February 14, 1992. In addition, Dale demanded damages for waste during the Smith tenancy. The parties authorized the magistrate judge to enter final judgment pursuant to 28 U.S.C. § 636(c)(1).

The magistrate judge [hereinafter: "court"] found that (i) Smith became a tenant at sufferance on August 1, 1990, when execution of the state district court order granting summary possession was to have taken place but for the unsuccessful appeals to the superior court, and (ii) the Smith tenancy at sufferance terminated on June 30, 1991, based on a projection that Dale would have recovered possession within sixty days of the May 1, 1991, order—dismissing the Smith and Realty Trust appeals—but for the subsequent unsuccessful Realty Trust appeal from the first order dismissing its superior court appeal. *See supra* p. 846. Accordingly, the court determined that Smith was liable for the reasonable worth of the use and occupancy of the property, which the court calculated at the amount of rent fixed in the Smith–Realty Trust sublease for each month Smith held over as a tenant at sufferance, less the $47,168.35 previously received by Dale in accordance with the appeal bond, plus $16,170.76 in property taxes assessed during the Smith tenancy at sufferance, together with interest. Finally, the court granted Dale judgment against Smith for an additional $5,040.90 for waste to the property during the Smith tenancy.[1]

## II

### DISCUSSION [2]

#### A. *Tenancy at Sufferance*

■ The court ruled that since no landlord-tenant relationship existed between Dale

---

1. These appeals proceeded directly to this court pursuant to 28 U.S.C. § 636(c)(3).

2. The legal question as to whether an occupant of real property is a tenant at sufferance is sub-

and Smith, *see Carlton Chambers Co. v. Trask*, 261 Mass. 264, 158 N.E. 786, 788 (1927), Dale could not "control [Smith] as the sublessee...." We now examine its thesis.

■ It is widely acknowledged, in Massachusetts and elsewhere, that a sublessee becomes a tenant at sufferance in relation to the lessor upon termination of the sublessor's tenancy, at least absent an agreement to the contrary. *See Evans v. Reed*, 71 Mass. (5 Gray) 308, 309 (1855) ("Had [the sublessee] remained after [the sublessor] left, and [the owner] accepted rent of him, it would have been evidence from which an agreement to accept [the sublessee] as a tenant might have been implied.");[3] *see also Staples v. Collins*, 321 Mass. 449, 73 N.E.2d 729, 730 (1947) ("[A] tenancy at sufferance is readily changed into a tenancy at will by express or implied agreement of the parties.... [Continued] payment and acceptance of rent [on the regular rent day], standing alone, are prima facie proof of the creation of a tenancy at will...."). There is no contention or evidence that Dale accepted rent from Smith after the expiration of the Realty Trust subtenancy. Thus, by holding over after the Realty Trust sublease with Dale had expired, Smith became a tenant at sufferance. *See Evans*, 71 Mass. (5 Gray) at 309.

■ Although the absence of privity—either of contract or estate—between the landowner and the sublessee precludes an action for rent against the sublessee, *see* 49 Am. Jur.2d *Landlord and Tenant* § 509, at 488–89 (1970); 1 A. James Casner, *American*

*Law of Property* § 3.62, at 313 (1952), the present action is not for rent but for use and occupancy of the property by Smith during its holdover following expiration of the Realty Trust subtenancy with Dale. *See Lowell Hous. Auth. v. Save–Mor Furniture Stores, Inc.*, 346 Mass. 426, 193 N.E.2d 585, 588 (1963) ("The liability of a tenant at sufferance is not to be determined arbitrarily by the rent fixed in a lease with the former owner, but rather is the sum which the trier of fact finds the use and occupation were reasonably worth.").

■ The court below held, in reliance on *Dennett v. Nesson*, 244 Mass. 299, 138 N.E. 381 (1923), that Smith could not have become a tenant at sufferance prior to execution of the state district court judgment for possession, initially scheduled for August 1, 1990.[4] The court further noted that "a tenancy at sufferance existed [in *Dennett*], if it existed at all, only *after* judgment for possession was granted to the landlord." The core question in *Dennett*, however, was whether the order staying the judgment of ejectment resulted in a new tenancy at will once the holdover tenant commenced making the rent payments *required by court order*. Thus, the *Dennett* holding—that "[t]he mere acceptance of rent, in the circumstances here disclosed, falls far short of requiring a finding that a new tenancy at will was created[,]" *id.* 138 N.E. at 382—is inapposite to the question presented here: at what point does a tenancy at sufferance arise? We turn to the latter question.

ject to *de novo* review. *See Cumberland Farms, Inc. v. Montague Econ. Dev. & Indus. Corp.*, 78 F.3d 10, 12 (1st Cir.1996).

3. *See generally*, 49 Am.Jur.2d *Landlord & Tenant* § 511, at 490–91 (1970) ("The right of the sublessee to the possession of the premises, as against the original lessor, terminates with the lease or term of the original lessee...."); 1 Basil Jones, *Tiffany Law of Real Property* § 174, at 277 (3d ed. 1939) ("A sublessee of a tenant for years, holding over after the expiration of the lessor's term, is also properly regarded as a tenant at sufferance.") (citing *Evans* ); 1 A. James Casner, *American Law of Property* § 3.32, at 235 (1952) ("A sublessee holding after the termination of the main lease is [a tenant at sufferance].") (citing *Evans* ).

4. The plaintiff in *Dennett* was a tenant at will "[i]n the fall of 1920," 138 N.E. at 381, when the defendant-landlord raised the rent. After the plaintiff refused to pay the increased rent, the defendant-landlord brought an action for ejectment. After entry of the judgment entitling the defendant-landlord to recover possession, the plaintiff was granted a stay of execution, remained in possession, and remitted the increased rent payments *pursuant to court order*. Once the plaintiff had been evicted, however, he contended that the landlord's acceptance of rent during the stay of execution on the judgment of ejectment gave rise to a new tenancy. The Supreme Judicial Court disagreed, holding that "[plaintiff's] tenancy at will ended in the fall of 1920, and thereafter his occupancy was that of a tenant at sufferance." *Id.* 138 N.E. at 382.

As explained above, *see supra* p. 847, a sublessee which holds over after its sublessor's tenancy has terminated becomes a tenant at sufferance vis-á-vis the property owner. *See Evans,* 71 Mass. (5 Gray) at 309. In other words, the tenancy at sufferance arises by virtue of the holdover. *See Benton v. Williams,* 202 Mass. 189, 88 N.E. 843, 844 (1909). Thus, "a tenant for life, for years, a periodic tenant or a tenant at will who holds over without the consent of his landlord after his estate is brought to an end is a tenant at sufferance, and this however his estate may have terminated." 1 A. James Casner, *American Law of Property* § 3.32, at 235 (1952) (footnote omitted); *see also C. Healy Assocs. v. Concord Oil Co.,* 1992 WL 24068, at *1 (Mass.App.Div.1992) ("After the termination of the lease, subtenant in possession was a tenant at sufferance.").

In an instructive application of this legal principle, the Massachusetts Supreme Judicial Court ("SJC") was called upon to decide whether the plaintiff, who had acquired title by eminent domain, could treat the prior property owner's lessee as a tenant at sufferance. *See Lowell Hous. Auth.,* 346 Mass. 426, 193 N.E.2d 585. The SJC held that the tenant, "*simultaneously with the taking* [— *i.e.,* upon the transfer of title—] became a tenant at sufferance of the [new owner]." *Id.* 193 N.E.2d at 587 (emphasis added). Thus, *Lowell* effectively precludes the position taken by the court below, that the property owner first must obtain final judgment in a summary process action before it can acquire the *right* to possession.

Summary process actions were designed for use in just such circumstances. The Massachusetts statute provides: "If ... *a person holding under [the lessee of land] holds possession without right* after the determination of a lease by its own limitation ..., the person *entitled* to the land ... may recover possession thereof under this chapter." Mass. Gen. Laws ch. 239, § 1 (emphasis added). *See Commonwealth v. Goldberg,* 319 Mass. 7, 64 N.E.2d 438, 438–39 (1946) ("[A] tenant ... whose tenancy has terminated is liable to summary process under [Mass. Gen. Laws ch. 239, § 1], as a 'lessee of land' who 'holds possession without right after the determination of a lease ....' ") (quoting *Marster v. Cling,* 163 Mass. 477, 40 N.E. 763, 764 (1895)). Thus, the Massachusetts statute plainly contemplates that a tenancy at sufferance may predate the summary process action itself. *See* Mass. Gen. Laws ch. 239, § 3 ("*[I]f the court finds that the [property owner] is entitled to possession,* [the property owner] shall have judgment and execution for possession ...." (emphasis added)); *see also Ghoti Estates, Inc. v. Freda's Capri Restaurant, Inc.,* 332 Mass. 17, 123 N.E.2d 232, 238 (1954) ("We are of opinion that ... if [the defendant] was a tenant at sufferance when the action of summary process was instituted no notice of any kind was required."); *Marster v. Cling,* 163 Mass. 477, 40 N.E. 763, 764 (1895) ("[Once] the defendants were made tenants at sufferance ..., the plaintiff, after giving his notices, had the right to immediate possession [by summary process]."). Accordingly, a tenancy at sufferance may arise before—indeed, even absent—any summary process action. *See, e.g., Lowell Hous. Auth.,* 346 Mass. 426, 193 N.E.2d 585.

The court below erroneously concluded that the Smith tenancy at sufferance had arisen *by virtue of* the state district court order granting Dale the right to take possession in the summary process action. *See Ghoti Estates,* 123 N.E.2d at 238 (tenancy at sufferance began before entry of judgment in summary process action). Instead, Smith became a tenant at sufferance on June 1, 1989, by holding over after the Realty Trust subtenancy had terminated under the terms of its sublease with International following Realty Trust's failure to renew the sublease in a timely manner. *See Evans,* 71 Mass. (5 Gray) at 309.[5] Thus, the Realty Trust sub-

---

5. Smith argues, in the alternative, that since the summary process order stated that Realty Trust became a tenant at will on June 1, 1989, further litigation on that matter was barred by *res judicata.* On the contrary, the nature of the Realty Trust subtenancy was never litigated in the summary process action, since it was entirely immaterial to the determination that the Realty Trust sublease with International (Dale's predecessor in title) had terminated by virtue of Realty Trust's failure to renew the sublease in accordance with its express terms. As the complaint and the state district court order reflect, the sole issue was whether Realty Trust had given Dale timely no-

tenancy terminated on May 31, 1989, whereupon Smith, Realty Trust's former sublessee, became a tenant at sufferance.

■ Next we consider the claim raised in the Smith cross-appeal: whether the court correctly ruled that the Smith tenancy at sufferance ended June 30, 1991, because (i) the summary process action against Smith terminated on May 1, 1991, with the dismissal of the Smith appeal from the state district court order, and (ii) final judgment in the summary process action would have been entered by June 30, 1991, but for the unsuccessful second appeal taken by Realty Trust.

Smith contends that it ceased to be a tenant at sufferance on January 1, 1991, when it surrendered the property to Realty Trust, thereby enabling Dale to take possession. Dale responds that Smith was a tenant at sufferance throughout the second Realty Trust appeal from the state district court order in the summary process action, since Dale could not enter upon the property pending the Realty Trust appeal without regard to whether Smith itself took a further appeal. Dale also maintains that Smith remained a tenant at sufferance until February 14, 1992, the date Dale became entitled to recover possession of the property pursuant to the order of possession entered in the summary process action.

A tenant who wrongfully holds over remains at sufferance for "such time as [it] may occupy or detain the [premises]." Mass. Gen. Laws ch. 186, § 3. Accordingly, as Smith asserted no right to continue its use or occupancy after vacating the premises on January 1, 1991, nothing prevented Dale from lawfully recovering possession of the property vis-á-vis Smith.

Relying on *Bandera v. Donohue*, 326 Mass. 563, 95 N.E.2d 654 (1950), the court below held that Smith's tenancy at sufferance could not have been terminated simply by its abandonment of the property, because there was no evidence that Dale had accepted its surrender of possession. *Bandera* is inapposite to the present context, however, as it involved an attempted abandonment of a *contractual* tenancy for years without the landlord's consent. The SJC simply held that the tenant remained liable in accordance with the *terms of the lease. Id.* 95 N.E.2d at 656.

In the present context, however, as Smith was merely a tenant at sufferance its abandonment of the premises in no sense impeded—from that time forward at least—Dale's right to assume immediate possession vis-á-vis Smith. Accordingly, upon its abandonment of the premises, Smith's tenancy at sufferance terminated. *See Benton v. Williams*, 202 Mass. 189, 88 N.E. 843, 844 (1909) (A tenant at sufferance "may leave at any time without notice or liability.").

■ Finally, Dale maintains that Smith *detained* the property pending its appeal from the order entered in the summary process action *and throughout the ensuing Realty Trust appeal from the May 1, 1991, order dismissing its first appeal. See* Mass. Gen. Laws ch. 186, § 3 ("Tenants at sufferance in possession of land ... shall be liable to pay rent therefor for such time as they may occupy *or detain* the same.") (emphasis added). Even though Smith had vacated the property completely on January 1, 1991, the court held that while its initial appeal from the summary possession order remained pending Dale was prevented from regaining possession of the premises. Although neither the court nor Dale articulated a legal rationale for their view, presumably Smith was deemed to have *detained* the property during its appeal from the summary process order despite the fact that it had vacated the premises on January 1, 1991.

As previously noted, Smith became a tenant at sufferance on June 1, 1989, upon the expiration of the Realty Trust sublease, rath-

---

tice of its intention to renew the lease. Since the state district court found that Realty Trust had not done so, it held that the Realty Trust "tenancy and rights pursuant to the lease with Dale therefore expired on May 31, 1989 and [Realty Trust] thereafter became a tenant at will as to these premises." Notwithstanding the state district court's *obiter dictum* that Realty Trust there-

after became a tenant at will, there was never any dispute or litigation between Dale and Realty Trust as to Realty Trust's status once its sublease expired. Accordingly, Dale's present contention that the Realty Trust subtenancy terminated on May 31, 1989, is not precluded. *See Chestnut Hill Dev. Corp. v. Otis Elevator Co.*, 739 F.Supp. 692, 696 (D.Mass.1990).

**850**

er than upon entry of judgment in the summary process action. *See* pp. 847–849, *supra.* Thus, since the *right* to possession remained with Dale throughout the unsuccessful Smith appeal, nothing prevented Dale—via-á-vis Smith—from resuming lawful possession once Smith vacated the premises on January 1, 1991.[6]

### B. *Reasonable Worth*

 A tenant at sufferance is liable for the reasonable worth of its use and occupancy and/or detention of the premises. *See* Mass. Gen. Laws ch. 186, § 3; *see also Lowell Hous. Auth.,* 193 N.E.2d at 588. Fixing a reasonable value normally entails a pure finding of fact, *id.,* which we review for clear error only. *See McMurray v. Commissioner of Internal Revenue,* 985 F.2d 36, 40 (1st Cir.1993).

██ The court below fixed the reasonable worth of the Dale premises at $9,433.67 per month, primarily in reliance on the rent established in the earlier Smith–Realty Trust sublease. Smith and Dale both challenge this finding, without approaching the required "clear error" showing. *See id.* Although Dale presented testimony that the reasonable monthly worth should be set slightly higher ($10,875), the expert witness had never considered the rent established in the Smith–Realty Trust sublease. Absent a showing that the earlier rental agreement established an unreasonable valuation standard for the subsequent use and occupancy, we discern no clear error. *See Industrial Gen. Corp. v. Sequoia Pac. Sys. Corp.,* 44 F.3d 40, 43 (1st Cir.1995) ("A finding of fact is ' "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' ") (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

██ Nevertheless, since the Smith tenancy at sufferance extended over the

nineteen-month period between June 1, 1989 and January 1, 1991, and Dale received reasonable rent for the five-month period between August 1, 1990 and January 1, 1991, pursuant to the appeal bond conditions imposed by the state district court, the court below erred in ruling that Dale was owed another $56,602.02 for the six-month period between January 1 and June 30, 1991, at $9,433.67 per month. Accordingly, the district court judgment must be amended to reflect that Smith is obligated to pay Dale $132,071.38 for its use and occupancy during the fourteen-month period June 1, 1989 through August 1, 1990, at $9,433.67 per month, plus interest.

### C. *Taxes*

Smith cross-appeals from the district court ruling directing it to pay $16,170.76 for real estate taxes assessed against the property during its tenancy at sufferance, insisting instead that it is liable only for fair rent under Mass. Gen. Laws ch. 186, § 3. We review *de novo. See Conservation Law Found., Inc. v. Busey,* 79 F.3d 1250, 1256 (1st Cir.1996).

Although Smith correctly notes that Massachusetts law simply provides that tenants at sufferance are liable for rent, *see* Mass. Gen. Laws ch. 186, § 3, the statutory term "rent" is broadly defined to encompass "the sum which the trier of fact finds the use and occupation were reasonably worth," *Lowell Hous. Auth.,* 193 N.E.2d at 588. Moreover, the SJC has expressly eschewed any suggestion that "[t]he liability of a tenant at sufferance is ... to be determined arbitrarily by the *rent* fixed in a lease...." *Id.* (emphasis added). Thus, the district court correctly ruled that the taxes assessed against the property were *not a precluded factor* in assessing the reasonable worth of Smith's use and occupancy. *Id.*

Since its tenancy at sufferance terminated on January 1, 1991, Smith could not be held liable for *any* use and occupancy thereafter.

---

**6.** Moreover, we have not found, nor did the court below cite, any Massachusetts authority for the view that a tenant at sufferance "detains" property simply by appealing a summary process order after having *completely* vacated the premis-

es. *Cf., e.g., Bruce v. Harvard Trust Co.,* 1 Mass. App.Ct. 373, 298 N.E.2d 880, 881 (1973) (although tenant vacated property, he detained it by leaving property in storage); *Horton v. Cooley,* 135 Mass. 589, 590 (1883) (same).

Moreover, since Smith has already paid the taxes assessed against the property between June 1, 1989, and August 1, 1990, its only remaining tax liability relates to the five-month period from August 1, 1990, through January 1, 1991, which the court below fixed at $8,085.38, plus twelve percent interest.

### D. Property Damage

The district court found Smith liable for waste amounting to $5,040.90 for damaging three poles located on the property. On appeal, Dale claims that Smith damaged other property as well, while Smith insists there was no evidence that it damaged the three poles. Neither party has shown "clear error."

The court supportably found that except for the damage to the three poles, Dale adduced no evidence that the premises or appurtenances were damaged during Smith's tenancy. Dale claimed that Smith was responsible for holes in a roof, but the claim was undermined by evidence that the roof had been leaking badly before Smith entered the property in 1987. Although Dale also complained that the property was in "deplorable condition" when he reentered in 1992, the only relevant evidence on this matter was to the effect that Smith had made substantial improvements after entering into possession, such that the property was in better condition when Smith left than when it took possession.

Finally, the district court acknowledged that the evidence connecting Smith to the pole damage was "slim." Nevertheless, it correctly found that Dale visited the property in 1983, and again in 1987 when the Smith sublease with Realty Trust commenced, but observed no damage to the poles on either occasion. Later, however—in May 1991—Dale observed damage to the poles. The court therefore supportably found that the damage to the poles had occurred during Smith's occupancy.

---

7. This amount includes the fourteen monthly rental payments (at $9,433.67) due Dale, after crediting Smith for the five monthly payments it

## III

### CONCLUSION

For the foregoing reasons, the judgment is hereby vacated in part and the case is remanded to the district court, which is directed to enter judgment against Smith in the net amount of $145,197.66,[7] plus prejudgment interest at twelve per cent per annum. In all other respects, the district court judgment is affirmed.

*The parties shall bear their own costs on appeal.*

*SO ORDERED.*

made pursuant to the appeal bond, plus $8,085.38 in property taxes and $5,040.90 in damages for waste.