EUDORA M. FAXON vs. ELIZABETH T. JONES.

Suffolk.    March 22, 1900. — May 17, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Unlawful Exclusion from Rooms in Hotel — Question of Fact for the Jury.*

In an action for an eviction or an unlawful exclusion of the plaintiff from his rooms in a hotel, the question whether there was a real and substantial exclusion or merely a temporary holding of the keys incident to the care of the rooms until the plaintiff should return and give the defendant an opportunity to converse with him, is one of fact for the jury.

TORT, for an eviction or an unlawful exclusion of the plaintiff from her rooms in the Hotel Huntington in Boston.  At the trial in the Superior Court, before *Maynard*, J., the jury returned a verdict for the defendant; and the plaintiff alleged exceptions, which appear in the opinion.*

*A. H. Latham*, for the plaintiff.

*R. W. Frost*, for the defendant.

KNOWLTON, J.    The plaintiff took the rooms under a lease from the defendant's husband, which contained a clause authorizing the landlord to enter peaceably and take and hold possession for non-payment of rent.   After the expiration of the lease the plaintiff held over under an oral agreement with the landlord that she might do so.   She afterwards paid rent at the same rate, and she must be deemed to have held over under the terms of the lease. . *Dimock* v. *Van Bergen*, 12 Allen, 551. *Weston* v. *Weston*, 102 Mass. 514, 518.   The defendant had general superintendence of the housekeeping department of the hotel, and it was a 'part of her duty to take measures to clear out vermin found in any of the rooms.   The plaintiff's rooms were taken care of by the servants of the hotel acting under the defendant's direction, and there was evidence that during the occupation of the plaintiff the rooms had become infested with bed bugs which had been seen crawling over the furniture to such an extent that it was distasteful to do chamber

---

* For another decision growing out of the same transaction, see *Faxon* v. *Jones, post*, 206.

work there. The plaintiff was a physician having an office on Winter Street, and on January 6, 1896, according to the testimony of her son, when he went out of the rooms on his way to luncheon he locked the doors and left the keys in the front room, throwing them over the transom, and when he returned they were gone. He said that he saw the defendant about three quarters of an hour afterward, and she said that she had taken the keys to compel the plaintiff to come and see her. On cross-examination he testified that he had a key that would unlock the door of the front room, and that the plaintiff knew it, and that he unlocked the front door when he returned from luncheon, and went away and left it unlocked. The plaintiff afterwards returned from her office to the hotel, and there was more or less trouble between her and others in regard to the keys.

The defendant testified that she had received information in regard to the vermin in the plaintiff's rooms, and had twice attempted to secure interviews with the plaintiff in regard to the subject, that she had called on the plaintiff and had sent a message on the Saturday previous, that on this day " she requested the chambermaid to bring the keys of the plaintiff's rooms to her, and that she retained the keys because she wished to see the plaintiff personally ; . . . that after receiving the keys from the maid she gave them to the clerk and told him to keep them until some member of the plaintiff's family returned, and when they did, to ask them to go to the defendant's apartment and see her. Subsequently she received a written note from the plaintiff saying that if her keys were not given to her at once she was advised to break in the door; that the defendant then supposed the doors were locked; that the defendant then talked with the plaintiff in the public hall; that previous to this she had an interview with the plaintiff's son and told him that she wished to see his mother personally and that she did not wish to say anything about it to him or his sister; that she offered to let him go into the room if he wished, but he declined."

The jury were instructed that inasmuch as it was admitted that the rent was overdue, the landlord or any person authorized to represent him would have a right to enter and take possession of the rooms, if he could do it peaceably, for the purpose

of terminating the tenancy, and instructed them further that such an entry could be made lawfully only if it was made for the purpose of terminating the tenancy, and he twice told them that he did not understand that there was any evidence in the case that an entry was made for this purpose. He then instructed them that the defendant had no right to exclude the plaintiff from her rooms, and he left to them the question whether she had excluded the plaintiff so that she could not enter. This last instruction was given at the request of the plaintiff, and there was no contention, so far as appears from the bill of exceptions, that there was not evidence which made it proper to submit the question to the jury. We infer from the evidence that the chambermaid who took care of the rooms under the direction of the plaintiff was the proper custodian of the keys during the plaintiff's absence from the house. It was proper for the defendant to make reasonable efforts to obtain an interview with the plaintiff in regard to the condition of her rooms. There was evidence that the plaintiff's son, all the time, had a key to the front room, and that the plaintiff knew it, and that the defendant offered to give him admission. It was a question for the jury on the whole evidence, whether there was a real and substantial exclusion of the plaintiff from her rooms, or merely a temporary holding of the keys incident to the care of the rooms until the plaintiff should return and give the defendant an opportunity to converse with her. By the plaintiff's own admission, when she inquired for the keys at the office, she was asked to call at the defendant's apartment, and she supposed she could get the keys there.

The statement to the jury about the right of the landlord to take possession under the provisions of the lease was in explanation of the relations of the parties, and not to authorize them to find an entry to terminate the tenancy when they were twice told that there was no evidence of an entry for such a purpose.

The evidence which was excluded related only to the question of damages, and the finding for the defendant makes it unnecessary to consider it.

*Exceptions overruled.*