*Southern Division*

**AGNES KASETA**

**v.**

**BROCKTON LITHUANIAN CITIZENS ASSOCIATION**

*Present*: Nash, P. J., Cox and Callan, JJ.

Case tried to KUPKA, J., in the District Court of Brockton. No. 16373.

*Cox, J.* This is an action of contract to recover $1800.00 for use and occupation of the corner premises numbered 3 and 5 on Intervale Street and 118 on Ames Street, in the City of Brockton, at the rate of $200.00 a month for nine months from September 1, 1956 to May 31, 1957. There was a decision

for the plaintiff for $765.00, the judge finding that sum to be the fair value for use and occupation of the premises for the nine months period.

The case was reported because both parties claim to be aggrieved, the plaintiff because of the denial of her requested rulings numbers 4 and 5, and the defendant because of the allowance of the plaintiff's request number 6.

The plaintiff's request for rulings numbers 4, 5 and 6 are as follows:

4. Upon the expiration of the lease the defendant had the alternative duty of paying the increase in rent in accordance with the notice to defendant dated July 26, 1956, or vacating the premises. The defendant's conduct in remaining on the premises warrants a finding of an implied promise to pay the increased rent.

5. The continued occupancy of the premises by the defendant from September 1, 1956 to July 31, 1957, after notice to said defendant that "Beginning September 1, 1956, the rent for the premises now occupied by the Brockton Lithuanian Citizens Association at the above address will be $200.00 a month", warrants a finding of an implied promise to pay said rent.

6. The plaintiff is entitled to the fair value for use and occupation of the premises from September 1, 1956 to August 1, 1957.

It appears that on August 30, 1951, the plaintiff leased the premises to the defendant for a term of five years at a monthly rental of $70.00 commencing September 1, 1951. The lease permitted the use of the premises for club room purposes, including the sale of intoxicating liquors, the congregation of members and guests for meetings, socials and other purposes. The lease contained a provi-

sion that the rent of $70.00 should be paid monthly "during said term and for such further time as the lessee, or any person or persons claiming under it, shall hold the said premises or any part thereof." That provision twice appears.

On July 26, 1956, more than one month before the lease was to expire, the plaintiff notified the defendant by registered mail that the rent for the premises would be $200.00 a month beginning September 1, 1956. The defendant continued to occupy the premises after the term stated in the lease had expired.

On October 26, 1956 and again on November 14, 1956, the plaintiff wrote the defendant that, in accordance with her notice of July 26, 1956, she was demanding $200.00 a month commencing September 1, 1956. She returned as unacceptable, the defendant's check dated October 1, 1956 for $70.00 and another dated November 5, 1956 for $61.02, the latter check representing the balance remaining after deducting $8.98 for one-half of the plate glass insurance premium because of a clause in the lease relating to the equal division of the premium. That item, however, is not involved in the Report.

On April 24, 1957, the plaintiff notified the defendant to quit and deliver up "the premises now occupied by you as a tenant at sufferance".

Five or six talks between the plaintiff and a committee acting for the defendant relative to a new lease were unproductive and the impasse continued until the defendant removed from the premises on July 31, 1957. The de-

fendant continued to tender $70.00 each month it remained in the premises. The plaintiff refused to accept the payments and insisted upon the payment of $200.00 monthly beginning September 1, 1956. It is clear from the report that neither party retreated from the position each had taken.

It is the plaintiff's contention because of the notice of July 26, 1956 that commencing September 1, 1956 the rent would be $200.00, the defendant had the choice of removing or paying the higher rent demanded. That is the essence of her requests numbers 4 and 5. The defendant, on the other hand, takes the position that the lease itself resolves the point that the rent should continue at $70.00 a month, for such further time as it continued to hold or occupy the premises after the expiration of the lease.

The defendant, by holding possession of the premises after the expiration of the term stated in the lease, no express or implied contract as to the character of its occupancy thereafter having been made, was a tenant at sufferance. That the defendant was a tenant at sufferance is not disputed. *Benton v. Williams,* 202 Mass. 189, 192. *Ames v. Beal,* 284 Mass. 56, 59. *Ghoti Estates, Inc. v. Freda's Capri Restaurant, Inc.,* 332 Mass. 17, 26.

The defendant's status as a tenant at sufferance is not affected by the covenant in the lease that it would pay rent during such period as it should continue to hold the premises after the expiration of the lease. *Edward v. Hale,* 9 Allen 462. *Benton v.*

*Williams,* 202 Mass. 189, 192. *Ames v. Beal,* 284 Mass. 56, 59.

██ The plaintiff, it is true, made various and repeated efforts to establish a monthly rental of $200.00 to commence at the end of the lease, but, it is clear that the defendant never agreed, expressly or by implication, to pay the higher rent. The defendant has, in fact, steadfastly refused to pay the increase and has consistently tendered $70.00 monthly as stipulated in the lease. Under those circumstances, the unilateral effort of the defendant to increase the rent cannot prevail. *Williams v. Seder,* 306 Mass. 134, 137. That decision, at page 137, admonishes that a case such as the instant one is to be distinguished "from those where the occupancy of premises or the purchase of commodities after notice of an increase in rental or price has been found to show an assent to pay the increased amounts." In the case before us there was no assent to the increase. On the contrary, it was consistently rejected.

██ It is enlightening to consider the legal nature of a tenancy at sufferance. "A tenant at sufferance has no estate or title, but only a naked possession, without right and wrongfully, stands in no privity to the landlord, at common law is not liable for rent (now liable for rent under G. L. c. 186, §3), is not entitled to notice to quit, and has no action against his landlord or other person entitled to possession, if himself, his family and goods are evicted without unnecessary force. He differs from a trespasser or disseiser only in that his entry upon the premises is

not unlawful. His continued occupancy is due wholly to the laches or forbearance of the person entitled to possession in not evicting him. He may leave at any time without notice or liability. No contractual relation (apart from statute) arises out of a possession of such a character." *Benton v. Williams,* 202 Mass. 189, 192.

We hold on the authority of *Benton v. Williams,* that it became the plaintiff's burden to evict if she found unsatisfactory the defendant's refusal to meet her demands for the increased rent at the expiration of the term of the lease, or be bound in the absence of a new agreement, express or implied, to demand and receive no more than the lease provided.

The twice repeated covenant in the lease which states the agreement of the lessee to continue to pay rent at the same rate after the expiration of the term fixed in the lease, was "intended to cover a case of holding over without the creation of a new contract, either written or oral, express or implied." *Ames v. Beal,* 284 Mass. 56, 61. G. L. c. 186, §5.

Accordingly, there was no prejudicial error in the denial of the plaintiff's requests for rulings numbers 4 and 5. They had become immaterial, although the judge might have allowed them and still found and ruled as he did against the plaintiff's contention. *Hoffman v. Chelsea,* 315 Mass. 54. *Brodeur v. Seymour,* 315 Mass. 527. *Liberatore v. Framingham,* 315 Mass. 538.

There was error in the allowance of the plaintiff's request number 6. The plaintiff

was not entitled to the fair value for use and occupation of the premises which the judge found to be $85.00 monthly, but only the amount of $70.00 monthly in accordance with the holding over provision in the lease. The defendant was prejudiced by the allowance of request number 6.

As there was error prejudicial to the defendant in the allowance of the plaintiff's request number 6, the finding of the judge is vacated and there is to be a new trial. *Elliott v. Warwick Stores, Inc.,* 329 Mass. 406, 409.

*James A. Reilly,* of Brockton, for the Plaintiff.

*Leonard Tamule* and *High T. Slunb,* both of Brockton, for the Defendant, in their brief stated:

One who becomes a tenant at sufferance by holding over after the expiration of a written lease or a tenancy at will is *prima facie* liable to pay rent at the same rate as under the prior agreement. *Commercial Wharf Co. v. Boston,* 208 Mass. 482, 487; *Faxon v. Jones,* 176 Mass. 138; *Weston v. Weston,* 102 Mass. 514; *Dimock v. Van Bergen,* 12 Allen 551; *Edwards v. Hale,* 9 Allen 462; *Davis v. Alden,* 2 Gray 309; *Bartholomew v. Chapin,* 10 Met. 1. But this presumption may be overcome by an express refusal of the tenant at the end of the term to pay the previous rental or by a claim to hold under an adverse title. *Dimock v. Van Bergen,* 12 Allen 551; *Flood v. Flood,* 1 Allen 217; *Boston v. Binney,* 11 Pick. 8; *Allen v. Thayer,* 17 Mass. 299.

An express covenant to pay rent at a certain

monthly rate, and at that rate for "such further time as the lessee shall hold the leased premises" is a covenant to pay rent at a certain rate while the tenant is a tenant at sufferance, if he continues in occupation of the premises after the expiration of the lease. *Commercial Wharf Co. v. Boston,* 208 Mass. 482, 487; *Warren v. Lyons,* 152 Mass. 310; *Ames v. Beal,* 284 Mass. 56. It is a limitation as to the amount of rent which a landlord may recover from a tenant at sufferance. *Edwards v. Hale,* 9 Allen 462.