Ostrach, J.
Plaintiff Darla O’Brien (“O’Brien”) has appealed the trial judge’s decision in this summary process case awarding her possession and $5,550.00 in damages. Unsatisfied with her success in the trial court, O’Brien contends that we should find that the evidence before the trial judge compelled an award of $23,200.00 in damages and enter judgment in that amount ourselves. We conclude that the evidence on damages before the trial judge was not as clear as O’Brien asserts, that the judge’s decision fell within the area of discretion committed to the trier of fact in a case like this, and, consequently, that the trial court’s judgment must be affirmed.
The factual background of this appeal is simple and largely undisputed. Beginning in 2008, O’Brien leased property in Edgartown to defendants Chris and Sarah Lynch (“Lynches”). The lease expired on May 31 and was annually extended through May, 2011. The last lease, for 2010-2011, specified a monthly rent of $1,800.00. While O’Brien and the Lynches discussed a further extension, and O’Brien proposed an increase to $1,850.00 per month, no agreement was reached. On April 25, 2011, O’Brien notified the Lynches that she no longer wanted to renew their tenancy and that the last day of the tenancy would be May 31,2011.
On May 25,2011, the Lynches sent O’Brien an e-mail informing her that they had been unable to find replacement housing and that they “will not be able to vacate the property.” They said that they were sending a check for the June “rent” and suggest *72 ed O’Brien should retain the previously paid “last month” to cover May’s rent, which had not been paid.[2] This was followed by an e-mail on May 29 from them agreeing to remain as “a tenant at sufferance,” but seeking clarification of the “absolute day to be out.” O’Brien’s husband, who was acting as her agent, responded eleven minutes later, saying O’Brien “need[ed] ... the property not later than June 30, as it would take us 3-4 weeks to get the house ready for use it [sic] in August.” That way, “we could have at least a month during the season.” O’Brien’s husband noted that June 30, 2011 was an “absolute date,” because “otherwise we ourselves can’t make plans ... air/ferry reservations, getting workers to come in for painting etc.”
With no meeting of the minds, O’Brien proceeded to initiate a summary process action, seeking possession and $1,800.00 use and occupancy for June. The case was tried without a jury on July 8 and August 12,2011. The only testimony preserved for us is that of O’Brien and Ralph Dostal (“Dostal”), a real estate agent who testified as her expert. Posttrial briefs were received on August 18 and judgment was entered on August 19, 2011. The judgment awarded O’Brien possession, but stayed execution until October 1,2011. It also awarded “rent” at $1,850.00 per month for all months of the Lynches’ holdover, including August and September, unless they vacated earlier. The Lynches’ counterclaim was dismissed.[3] The sole issue raised in O’Brien’s appeal is her claim that the trial judge erred by awarding her damages at the monthly rate she had proposed in her draft extension, rather than a total of $23,200.00.[4]
Given the trial court’s finding, not challenged on appeal, that the Lynches “had no right to remain in the premises” after May 31, 2011, O’Brien is certainly entitled to money damages from that date to when they actually vacated. The parties correctly agreed that the Lynches were tenants at sufferance after May 31. See, e.g., Kaseta v. Brockton Lithuanian Citizens Assoc., 16 Mass. App. Dec. 16, 20 (1958). General Laws c. 186, §3 provides that tenants at sufferance are liable for “rent” for such periods as they occupy the property. “Rent” under that statute has been construed as what the property is “reasonably worth” or its fair market value, a calculation that permits consideration of a variety of factors. See, e.g., Lowell Hous. Auth. v. Save-Mor Furniture, 346 Mass. 426, 431 (1963); Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 502 (1997). But see Kaseta v. Brockton Lithuanian Citizens Assoc., supra at 23 (parties can agree by contract on different holdover “rent”). An important, though not dispositive, factor in that calculation is the rent that the parties had agreed upon in the expired tenancy. Gordon v. Sales, 337 Mass. 35, 37 (1958); Emmons v. Scudder, 115 Mass. 367, 371 (1874).
*73 The trial court’s decision notes there was “no evidence of the exact amount of lost rental income nor of the market value of [the property for] the aforementioned rental period.” But rather than awarding O’Brien zero or nominal damages, the judge ordered the Lynches to pay O’Brien $1,850.00 per month, $50.00 more than the monthly rental under the expired lease and the same amount O’Brien proposed in the draft extension she sent the Lynches in April. O’Brien appeals that decision.
1. The focus of this appeal is the above-quoted language in the judge’s findings that there was “no evidence of the exact amount of lost rental income.” That statement is literally true; Dostal’s estimate of lost profits was, as discussed below, far from exact. O’Brien asks us, however, to recast the judge’s evaluation of the state of the evidence into a conclusion of law that the plaintiff had the burden of establishing her lost profits “exactly.” That, of course, would not be a correct statement of law. The well-established rule is that a plaintiff is not required to prove damages with mathematical exactness. See, e.g., Snelling & Snelling of Mass., Inc. v. Wall, 345 Mass. 634, 636 (1963); Lowrie v. Castle, 225 Mass. 37, 51 (1916). What is required for recovery is for the plaintiff to establish her lost profits, or any damages, with reasonable certainty so the trier of fact is not required to resort to speculation or hypotheses. See Augat, Inc. v. Aegis, Inc., 417 Mass. 484, 488 (1994).
In this case, we conclude that the words in question were not intended as an (incorrect) statement of law. They are not phrased as conclusions of law; indeed, the record does not disclose that any conclusions or findings were requested at trial. In effect, O’Brien asks us to adopt the approach urged by the appellant in Advanced Spine Ctrs. v. Enterprise Rent-A-Car Co. of Boston, Inc., 2012 Mass. App. Div. 117, that is, to treat the judge’s “phrasing” as if it were a ruling of law and, thus, as “appeal-able and reversible.” Id. at 119. Like the Appellate Division in Advanced Spine Ctrs., we read the trial judge’s wording differently. If he had intended to rule, as a matter of law, that O’Brien had to prove her “exact” lost profits with mathematical exactness, contrary to many published decisions, he would have said so. Instead, his words were “couched not as a ruling of law but as a finding of fact, and we treat it as such.” Id.
Although the use of “exact” may have been less than precise, we conclude that the judge’s findings reflect a clear intent to award O’Brien full compensation for her loss of rental income during June, July, and August, the time the judge recognized as “the peak of the rental season and the time of the year commanding the highest rents.” That is just what O’Brien sought. The judge concluded, however, that Dostal’s testimony did not prove the specific amount of damages O’Brien sought with enough clarity to avoid him having to resort to speculation. “Damages for lost profits are recoverable only when proof is made “with sufficient certainty.’” Augat, supra at 488, quoting Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 181 (1979).
The “right of a plaintiff to recover damages based on prospective profits is a fact-specific inquiry that must be appropriately adapted to the circumstances of each case.” O’Brien v. Pearson, 449 Mass. 377, 388-389 (2007). The conclusion that O’Brien did not offer enough evidence to warrant an award of a higher monthly rental than what she proposed a few months earlier was one of fact and must be reviewed under the “clearly erroneous” standard. See Dale v. H.B. Smith Co., 136 F.3d 843, 850 (1st Cir. 1998) (under Massachusetts law, “ [ffixing a reasonable value [for sufferance “rent”] normally entails a pure finding of fact which we review for *74 clear error only” [citation omitted]). That standard is well established. As we stated in JonJame Realty Trust v. Ryan, 2011 Mass. App. Div. 16:
To prevail on appeal on the basis of an assault on a judge’s factual findings is no easy matter, for we accept the judge’s findings of fact as true unless they are ‘clearly erroneous.’ Millennium Equity Holdings LLC v. Mahlowitz, 456 Mass. 627, 636 (2010). The trial judge ‘had the opportunity to view the witnesses’ demeanor, as well as to listen to their testimony. In this fact-intensive case, she was in the best position to assess the credibility of the witnesses and to determine the facts.’ Id. at 636-637. Reviewing a judge’s factual conclusions, we set them aside only if we are left with the firm and definite conviction that a mistake has been committed. Id. at 637, quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 510 (1997).
Id. at 17.
2. O’Brien asserts that the evidence supporting her claim for $23,200.00 was so overwhelming that the trial court’s finding that she was entitled to $5,500.00 was “clearly erroneous.” Her focus is on the strength of her evidence, rather than on the inadequacy of the sum the judge awarded since that latter sum is adequately supported in the record; it is, after all, just the amount she herself proposed as a rent for the same four months in the draft lease she sent the Lynches in April.
But the evidence presented by O’Brien and Dostal was far from overwhelming. It suffers from major flaws, both externally and internally. Considered externally, that is with respect to times and places other than the specific “rental” period at question, O’Brien failed to offer any evidence whatsoever of rentals of similar property for the summer of 2011. Indeed, the only specific rental Dostal discussed was the rental of the unit at issue here from May 31 to October 14, 2006, for $14,400.00. Particularly since Dostal testified that the real estate market had “crashed” since 2006[5] and that in 2011 the weekly rental market was still “slightly soft,” his testimony about a rental five years earlier for a longer period at a substantially lower amount does not help O’Brien’s case. Indeed, looking broadly at Dostal’s testimony, it amounts to the claim that in 2011 O’Brien could rent a unit for sixteen weeks for $23,200.00 despite the undisputed fact that for the prior three years, the total annual rent had been only $21,600.00 for the entire year prior to the period in question. A witness’ testimony that implies that a habitable house in Edgartown has a negative rental value for more than two-thirds of the year is not something a trier of fact must be compelled to accept.
Using an internal analysis, that is, focusing solely on this property and the specific time in question, helps O’Brien no more. The Lynches had a right to remain in the property until May 31. O’Brien’s husband’s May 29 e-mail recognizes that it takes time, in this case between three weeks and a month, to get property ready for a new tenant. Thus, O’Brien could never have obtained rental income for June. Even that *75 may be generous, since the May 29 e-mail recognized that under the circumstances, particularly O’Brien’s late decision not to renew the tenancy, it was clear that the Lynches would need time to locate alternative housing. O’Brien’s evidence about the summer rental market on the island works against her, since the Lynches had to find a new unit on short notice in difficult circumstances. See Lowell Hous. Autk, supra at 431 (recognizing that tenant’s difficulty in finding replacement property on short notice may affect sufferance rent.)
Dostal’s testimony also ignores serious problems O’Brien would have encountered in finding tenants at the rates she seeks. There was no testimony that the property was actually listed for the summer of 2011, or that any persons had inquired into renting it or made offers in May when the parties still anticipated that the Lynches would be out by the end of June. Thus, beginning June 1, O’Brien would have been in the difficult position of seeking tenants for immediate possession. Plainly, most rentals on the island are completed well before the summer season begins; there can be few, if any, “walk-ons” on an island famous for being a summer resort. As Dostal conceded, in such circumstances, it is a buyer’s, not a seller’s, market. Common sense teaches that last minute rentals are often made for less than rentals made in advance, just like last minute airline or hotel prices.
More significantly, Dostal’s opinion shows gross rental income; that is, he simply multiplied dollars a week by so many weeks. As anyone who has rented, or thought about renting, property knows, gross rental is only the start. Every landlord must incur significant expenses that reduce her net profits. She often must pay an agent for a listing, incur advertising, insurance, and other expenses, and inevitably pay for repainting and repair of the unit and sometimes increased utility expenses. The May 29 e-mail reflects O’Brien’s understanding of the need to incur some of those costs for this property. Since O’Brien was entitled only to her lost net profit, see Jet Spray Cooler, Inc., supra at 175 n.15; Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 610-611 (2007). Dostal’s estimate of lost gross rents could properly have been rejected by the judge.
None of these factors, external or internal, by themselves may have been so significant as to have compelled the trial judge to have rejected Dostal’s opinion. But their cumulative effect weakens O’Brien’s case on “lost profits” enough to make it clear that the trial judge had discretion to reject Dostal’s speculative approach and instead calculate O’Brien’s “lost profits” by using the gross rent she suggested to the Lynches a month earlier. Particularly since the judge’s method gave O’Brien full credit for lost June rent, which was unlikely to be realized, and since it made no deductions for any of the necessary expenses she would certainly have incurred, we conclude that O’Brien has not shown “clear error” and that the trial court’s decision must be affirmed.
Judgment affirmed.

 The Lynches also offered to replace the “last month’s” rent if O’Brien wished.

 The counterclaim alleged violation of the security deposit law. The trial judge found that while O’Brien did not comply with the “strict terms” of the statute, she did return the deposit with interest within the statutory period, which he found to be adequate compliance. The Lynches have not appealed dismissal of the counterclaim.

 That reflects Dostal’s testimony that the fair market rental for the property would have been four weeks in early June and late September at $1,000.00 per week, four weeks in late June and early September at $1,400.00 per week, and eight weeks in July and August at $1,700.00 per week, for a total of sixteen weeks and $23,200.00. The calendar suggests there are seventeen weeks between June 1 and September 30.

 A crash or “severe sinking spell” in the real estate market can warrant reducing a tenant at sufferance’s holdover rent. See Kobayashi v. Orion Ventures, supra at 502.