FIRST REPUBLIC CORPORATION OF AMERICA *vs.* BAYBANK.

Middlesex. December 2, 1996. - April 10, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Secured Transactions. Uniform Commercial Code,* Bank, Secured creditor, Secured transaction, Possession of collateral.

A secured lender was not liable for use and occupancy after the debtor defaulted leaving the collateral for the note (heavy equipment and machinery) remaining on a landlord's premises, in circumstances in which the lender never took possession of the collateral and otherwise had behaved in a commercially reasonable manner; further, public policy considerations mandated that the risk of a tenant's default should be borne by the landlord and not by a commercial lender. [707-708]

CIVIL ACTION commenced in the Superior Court Department on May 16, 1988.

The case was heard by *Sandra L. Hamlin,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Charles R. Bennett, Jr.,* for the defendant.

*Kevin F. Moloney* for the plaintiff.

ABRAMS, J. At issue is whether a secured lender is liable for use and occupancy after the debtor defaults, leaving the collateral for the note (heavy equipment and machinery) in the landlord's premises. On cross motions for summary judgment, a judge of the Superior Court concluded that the secured creditor, the defendant, BayBank,[1] should be held liable for the use and occupancy of the plaintiff's, First Republic Corporation of America's, premises in Waltham.[2] The defendant appeals. We transferred the case here on our own

---

[1]The bank originally was known as BayBank Middlesex.

[2]First Republic and BayBank also had filed motions for summary judgment arguing for and against theories of unjust enrichment and continuing trespass. These summary judgment motions were allowed in favor of Bay-

motion. We conclude that, in these circumstances, BayBank is not liable for the use and occupancy of the plaintiff's premises.

The undisputed facts are as follows. Waltham Precision Instruments, Inc. (WPI), rented space from First Republic for production of parts. Its use of the space included large equipment and machinery utilized in making its products. Using this heavy equipment as collateral,[3] WPI borrowed money from BayBank through a loan and security agreement, dated October 25, 1982, to raise financial capital. At that time, BayBank perfected its security interest, which it maintained throughout the relevant time period.

In 1987, due to financial difficulties, WPI defaulted on both its loan payments to BayBank and its rent payments to First Republic. In September, 1987, First Republic evicted WPI and, in October of the same year, enjoined it from entering and using the premises. WPI left behind the heavy equipment and machinery, which had served as part of the collateral for the BayBank loan. A Superior Court judge found that the occupation of the premises was virtually exclusive and made the property unable to be rented to another tenant.

First Republic served a letter dated October 26, 1987, to BayBank demanding that it remove its collateral or agree to pay rent for the use of the premises. BayBank briefly entered negotiations to determine a short-term rental rate should it wish to assume possession of the collateral and attempt to liquidate it. BayBank obtained estimates of the cost of removing the equipment and found that it would cost $177,000 to $200,000. Ultimately, the negotiations ceased.

On November 23, 1987, the United States Internal Revenue Service (IRS) took steps to place a levy on WPI's assets. On December 7, 1987, WPI was declared involuntarily bankrupt and a trustee was appointed. BayBank released WPI from its lien in March, 1988. The bankruptcy trustee sold the equipment in late April for $300,000, from which BayBank received $280,000. First Republic received $30,000 from the bankruptcy estate in conjunction with a settlement agreement to cover the occupancy of the property during the months of March and April, 1988.

Bank by the Superior Court judge. The plaintiff did not file a cross appeal. We therefore only decide the use and occupation claim.

[3]The collateral also included all WPI accounts receivable, books and records, inventory, equipment, and machinery.

First Republic brought suit against BayBank to recover for use and occupancy of the space for the period of time from October, 1987, through February, 1988. The Superior Court judge determined that BayBank was liable for use and occupancy. The judge awarded rent for the space used during the entire time period from when the letter was sent in October, 1987, through February, 1988. BayBank appeals from that decision.

First Republic argues that BayBank is liable to it by virtue of an implied contract for use and occupancy. First Republic theorizes that BayBank had taken constructive possession of the collateral, establishing both the defendant's occupancy of the premises and a contractual relationship between the parties. See *Mathews* v. *Carlton*, 189 Mass. 285, 286-287 (1905). We conclude that, although BayBank was a secured creditor with a perfected security interest, it never was in possession of the collateral and is therefore not liable to First Republic for use and occupancy.

The Superior Court judge noted that BayBank had two options under G. L. c. 106, § 9-503,[4] once WPI defaulted and was deemed bankrupt: to take possession of the collateral or to dispose of the collateral. BayBank did explore all available options, including the feasibility of taking possession. To determine the wisdom of that course of action, BayBank attempted to determine potential removal and storage costs, conducted discussions with potential buyers, and discussed the potential of a short-term lease with First Republic.

Based on this research, BayBank found that the equipment was difficult to move. The estimate given for the cost of removing and storing the equipment was over one-half of the actual value of the equipment itself, making a move impractical for any of the parties involved.[5] The fact that BayBank continued to investigate the available options is not tantamount to possession.

---

[4]General Laws c. 106, § 9-503, provides in part: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. . . . Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under [§] 9-504."

[5]In other circumstances, First Republic simply could have moved the equipment into storage, provided that it was done in a commercially rea-

First Republic further argues that BayBank failed to act in a commercially reasonable manner. We disagree. A secured creditor is not required to take possession of the collateral used to secure a loan. See *Arlington Trust Co.* v. *Caimi*, 414 Mass. 839, 846 (1993), quoting *Connecticut Nat'l Bank* v. *Douglas*, 221 Conn. 530, 541 (1992) ("Article 9 [of the Uniform Commercial Code] imposes no duties on a nonpossessory secured lender with regard to the disposition of the secured collateral"). Thus, BayBank had no legal obligation to do anything, particularly once the IRS levy attached and bankruptcy had been declared.

BayBank had not taken possession at the time when the IRS placed a levy on the assets or when bankruptcy was declared.[6] In fact, less than one month had transpired between the demand letter from First Republic to BayBank and the IRS levy on all of WPI's assets. BayBank's failure to make a decision in that short time period did not extinguish its security interest or give rise to any legal obligations.

First Republic's reliance on *Elliot* v. *Villa Park Trust & Sav. Bank*, 63 Ill. App. 3d 714 (1978), is misplaced. In that case, the indicia of possession were much clearer. The creditor bank in *Elliot* actually took possession; it removed parts of the collateral from one part of the premises to a safer location on the same premises. It then left that equipment to be stored on the premises and authorized a direct sale to a purchaser.

In the case at bar, a bankruptcy trustee was responsible for the disposal of the collateral. BayBank did examine the collateral and maintain insurance on it, but these actions are as consistent with a company's deciding whether to take possession as they are with a company that already has taken possession. BayBank's only "removal" of collateral at any point refers to papers with accounts receivable information and not the removal of the actual equipment at issue. Thus, the holding in *Elliot* is distinguishable on its facts.

Further, BayBank had a right to obtain judgment against

---

sonable manner, and made a claim in the bankruptcy proceeding for moving and storage.

[6]First Republic asserts that, because BayBank had a superior right to the IRS's levy and to the bankruptcy trustee, BayBank should have taken possession of the collateral. This right does not create any legal obligation to take possession.

the borrower without looking to the collateral at all. See G. L. c. 106, § 9-501 (1); *Acushnet Fed. Credit Union* v. *Roderick,* 26 Mass. App. Ct. 604, 608-609 (1988). It waited for the bankruptcy trustee to dispose of the property. Although BayBank had entered in negotiations for the sale while contemplating possession, the actual sale was consummated by the trustee. The fact that First Republic negotiated with the trustee for rent for the months of March and April of 1988 is evidence that First Republic viewed the trustee as the possessor of WPI's assets. We conclude that BayBank is correct in its assertion that the claim should not be brought against it, but rather against WPI or the bankruptcy trustee. It is WPI, and not BayBank, which had an obligation to return the premises to First Republic free from goods. See, e.g., *Bruce* v. *Harvard Trust Co.,* 1 Mass. App. Ct. 373, 374-375 (1973).

The fact that BayBank received most, but not all, of the proceeds from the sale is a result of its status as secured creditor. Its security interest in the collateral never expired. Therefore, the proceeds of the sale of the collateral rightfully went to it, by virtue of its security interest, *not* by virtue of possessing the equipment.

Effective public policy supports our decision. The risk of a tenant's default should be borne by the landlord, not by a creditor bank. If our decision today made the use of heavy machinery and equipment impractical as collateral, then companies such as Waltham Clock (the eventual purchaser of the equipment) might be unable to raise capital from financial institutions because of a lack of commercially attractive mobile collateral.

We vacate the Superior Court judge's allowance of the summary judgment motion and remand for the allowance of a summary judgment motion in favor of BayBank.

*So ordered.*